IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATASHA NATILE FRANCE | Criminal Action No.<br><br>1:19-cr-00103-TCB-AJB |

**Government's Brief re: Warrantless, Suspicionless Customs Border Searches**

Pursuant to this Court's October 3, 2019, order, the United States of America, by Byung J. Pak, United States Attorney, and Sekret T. Sneed, Assistant United States Attorney, for the Northern District of Georgia, hereby files this brief regarding whether a parcel sent via United States priority mail from the continental United States to a U.S. territory, specifically, the U.S. Virgin Islands, is considered a border search for purposes of the Fourth Amendment and if reasonable suspicion is needed. As explained more fully below, the Fourth Amendment permits warrantless, suspicionless searches at the border, including, at the customs border of the U.S. Virgins Islands and the continental United States.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. While warrantless searches are considered generally unreasonable under the Fourth Amendment, courts have recognized certain exceptions to this general rule. As relevant here, one such long recognized exception is a search at the border of the United States. *See United States v. Ramsey*, 431 U.S. 606, 619 (1977) ("Border searches, then, from before the

1

adoption of the Fourth Amendment, have been considered to be 'reasonable' by the single fact that the person or item in question had entered into our country from outside. There has never been any additional requirement that the reasonableness of the border search depended on the existence of probable cause. This longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless 'reasonable' has a history as old as the Fourth Amendment itself. We reaffirm it now"). In *Ramsey*, customs officials in New York opened for inspection an international letter-class mail from Thailand, without a warrant or a reasonable cause to suspect, and discovered white powder that tested positive as heroin. 431 U.S. at 607. The defendants challenged the search. The Supreme Court upheld the search, finding that the border search exception "is grounded in the right of the sovereign to control, subject to substantive limitations imposed by the Constitution, who and what may enter the country." *Id.* at 619-620.

Consistent with this Supreme Court precedent, the Third Circuit in *United States v. Hyde*, 37 F.3d 116 (3d Cir. 1994), held that the border search exception to the Fourth Amendment applies to the "internal border" between the continental United States and the U.S. Virgin Islands (holding that warrantless patdown searches, i.e., "routine customs searches," unsupported by probable cause, by customs officers at the airport in the US Virgin Islands of passengers traveling to Florida were not unreasonable).[1]

---

[1] The U.S. Virgin Islands are an unincorporated territory of the United States. *See* 48 U.S.C. § 1541(a).

While *Hyde* is not binding on this Court—and the government did not find a decision by the Eleventh Circuit extending the border search exception to the internal border between the continental United States and the U.S. Virgin Islands—*Hyde*'s reasoning regarding the applicability of the exception is persuasive. *See Hyde*, 37 F.3d at 122 (" . . . we perceive the interest of the United States in warrantless searches without probable cause at this 'internal' border to be little different from its interest in such searches at its international borders"). Thus, a warrantless and suspicionless customs search of a parcel sent via U.S. priority mail from the continental United States to the U.S. Virgin Islands comports with the Fourth Amendment, just as courts have found that warrantless, suspicionless customs searches of a parcel mailed from a foreign county to the United States do. *See, e.g., Ramsey*, 431 U.S. at 620 ("It is clear that there is nothing in the rationale behind the border-search exception which suggests that the mode of entry will be critical. . .. Surely no different constitutional standard should apply simply because the envelopes were mailed, not carried. The critical fact is that the envelopes cross the border and enter this country, not that they are brought in by one mode of transportation rather than another. It is their entry into this country from without it that makes a resulting search 'reasonable'"). *See also United States v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2018) ("The Supreme Court has never required reasonable suspicion for a search of property at the border, however non-routine and intrusive, and neither have we").

To the extent that *United States v. Barconey*, Nos. 2017-0012 and 2018-0004, 2019 WL 137579 (Jan. 8, 2019 D.VI.), dictates a contrary result, it is inconsistent with *Hyde* and *Ramsey*. In *Barconey*, the District Court in the U.S. Virgin Islands interpreted *Hyde* to establish that warrantless, suspicionless searches at the border between the United States and the Virgin Islands may be reasonable if: "(1) the search is federally authorized; and (2) the United States' interest in regulating the flow of persons and effects across the border outweighs the individual's reasonable expectation of privacy at the border." *Id.* at *9. It is well-established, however, that a balancing test is not necessary when, as here, an established exception to the warrant requirement resolves the constitutionality of a search. *See Riley v. California*, 573 U.S. 373, 385 (2014) (explaining that "[a]bsent more precise guidance from the founding era, we generally determine whether to exempt a given type of search from the warrant requirement" by balancing government and privacy interests); *Illinois v. McArthur*, 531 U.S. 326, 331 (2001) (employing a balancing test when a search did not fall under an established category). Stated differently, because routine customs searches at the border are categorically reasonable under the Fourth Amendment, it is not necessary to conduct a balancing test in every individual case to determine the constitutionality of the search. Alternately, even if this Court were to conclude that it must balance government and privacy-related interests to determine reasonableness, the government's interests in conducting routine customs searches at the border, *see, e.g., United States v. Flores-Montano*, 541 U.S. 149 (2004) (contraband); *United States v. Montoya de Hernandez*, 473 U.S. 531, 540-541 (1985)

4

(national security), outweigh any potential privacy-related interests in priority mail.[2]

Lastly, assuming any border search were found to be violative of the Fourth Amendment, the good faith exception to the exclusionary rule would apply since Federal regulations permit warrantless searches—and in some cases, suspicionless searches—at the border between the United States and the U.S. Virgin Islands. Specifically, except for first class mail, U.S. Postal Service regulations unambiguously authorize customs officials to search mail where there is "reasonable cause to suspect the presence of merchandise or contraband" sent to the U.S. Virgin Islands from the continental United States. *See* 19 C.F.R. §§ 145.1-145.3. U.S. Census regulations, on the other hand, provide far ranging inspection authority under the Export Control Reform Act, 50 U.S.C. §§ 4801-4852. These regulations authorize customs officials to conduct a "physical inspection of . . . items, whenever such action is deemed necessary to assure

---

[2] Note, however, that a warrantless search at an extended border might require at least reasonable suspicion. *See United States v. Niver*, 689 F.2d 520, 526 (5th Cir. 1982).

compliance with the [Export Administration Regulations]."[3]  *See* 15 C.F.R. § 758.7(a) & (b)(1) & (6).

                                                                            Respectfully submitted,

                                                                            BYUNG J. PAK
                                                                               *United States Attorney*

                                                                            /s/SEKRET T. SNEED
                                                                               *Assistant United States Attorney*
                                                                            Georgia Bar No. 252939
                                                                            sekret.sneed@usdoj.gov

---

[3] EAR provides that firearms, which are categorized as a product that requires a license to be exported (which includes exports from the continental United States to the U.S. Virgin Islands), must be reported on a Shippers Export Declaration ("SED"), or the electronic version of this declaration named an Electronic Export Information ("EEI"), in the U.S. Government's Automated Electronic System.  *See* 15 CFR § 30.2(a)(1).  EAR authorizes customs officials, and other specified government officials, to inspect exports for compliance with the regulations.  15 C.F.R. §§ 758.1-758.9.

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

November 29, 2019

/s/ SEKRET T. SNEED
SEKRET T. SNEED
*Assistant United States Attorney*